IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| MATTHEW GREEN, individually and on behalf of all others similarly situated,<br><br>　　Plaintiff,<br><br>　　v.<br><br>FLOWERS FOODS, INC., *et al.*,<br><br>　　Defendants. | Docket No. 5:17-cv-00784-MHH[1]<br><br>**JURY DEMAND** |
| GERALD HALL, JAMES D. HOUSE & JOHN K. RARY, individually and on behalf of all others similarly situated,<br><br>　　Plaintiffs,<br><br>　　v.<br><br>FLOWERS FOODS, INC., FLOWERS BAKING CO. OF GADSDEN, LLC, and FLOWERS BAKING COMPANY OF BIRMINGHAM, LLC, Individually, Jointly, and Severally,<br><br>　　Defendants. | Docket No. 1:17-cv-00932-MHH<br><br>**JURY DEMAND** |

**PLAINTIFFS GERALD HALL, JAMES D. HOUSE, AND JOHN K. RARY'S
SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT
IN CASE NO. 1:17-cv-00932-MHH**

---

[1] By Order dated January 2, 2018, this Court consolidated the Green and Hall matters "for purposes of discovery and pretrial proceedings." See Document No. 61, pages 4-5. This Court further directed "the parties to please file all future documents under case number 5:17-cv-00784-MHH and to use the style that appears in this order." See Document No. 61, page 5. By Order dated March 26, 2018, this Court granted the Plaintiffs in Hall leave to file this Second Amended Complaint on or before April 9, 2018. See Document No. 64, pages 5-6. The filing of this Second Amended Complaint is not intended as an amendment to the Green Complaint.

Plaintiffs Gerald Hall, James D. House, and John K. Rary, on behalf of themselves and other similarly situated individuals, by and through their undersigned counsel, file this Class and Collective Action Complaint and aver as follows:

## NATURE OF ACTION

1. This is a Class and Collective Action Complaint brought to obtain declaratory, injunctive and monetary relief on behalf of a class of individuals who operate(d) as fresh bakery product distributors for Defendants Flowers Foods, Inc., Flowers Baking Company of Gadsden, LLC ("Flowers Baking Company of Gadsden"), and Flowers Baking Company of Birmingham, LLC ("Flowers Baking Company of Birmingham") (collectively, "Flowers" or "Defendants") and who Defendants classify or classified as independent contractors. Plaintiffs allege violations of the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, Al. Code § 25-3, *et seq.*, and Alabama common law.

2. Defendants employ "distributors" to deliver fresh baked goods to their customers (primarily grocery stores, mass retailers, and fast food chains). In addition to delivering Flowers Foods' products to Defendants' customers, distributors stock the products on store shelves and assemble promotional displays designed and provided by Defendants.

3. The FLSA collective group consists of all individuals who operate(d) as distributors for Flowers, and are or were classified as independent contractors, anywhere in Alabama, at any time during the applicable limitations period ("Class" or "Distributors"). Plaintiffs bring the remaining counts on behalf of an Alabama class consisting of distributors operating out of the Flowers Baking Co. of Gadsden distribution center and/or other Alabama distribution centers.

4. This action challenges both the classification of distributors as independent contractors and Defendants' denial to Plaintiffs and the Class of the rights, obligations, privileges and benefits owed to them as employees. Plaintiffs also seek remedies for unjust enrichment.

## PARTIES

5. Plaintiff, Gerald Hall ("Hall") is a resident of Etowah County, Alabama who works as a Flowers Distributor in that state. He performs delivery and merchandizing services to local retailers of bakery and snack food products manufactured or sold by Flowers. Plaintiff Hall operates out of a distribution center run by Flowers Baking Co. of Gadsden, Flowers Baking Company of Birmingham, and/or one of their subsidiaries doing business in Alabama. Plaintiff regularly worked in excess of 50 hours per week and did not receive overtime premium pay at any time during the class periods.

6. Plaintiff, James D. House ("House") is a resident of Etowah County, Alabama who works as a Flowers Distributor in that state. He performs delivery and merchandizing services to local retailers of bakery and snack food products manufactured or sold by Flowers. Plaintiff House operates out of a distribution center run by Flowers Baking Co. of Gadsden, Flowers Baking Company of Birmingham, and/or one of their subsidiaries doing business in Alabama. Plaintiff regularly worked in excess of 50 hours per week and did not receive overtime premium pay at any time during the class periods.

7. Plaintiff, John K. Rary ("Rary") is a resident of Cherokee County, Alabama who works as a Flowers Distributor in this state. He performs delivery and merchandizing services to local retailers of bakery and snack food products manufactured or sold by Flowers. Plaintiff House operates out of a distribution center run by Flowers Specialty Food Service Sales and/or Flowers Baking Co. of Gadsden and/or Flowers Baking Co. of Birmingham and/or one of its subsidiaries doing business in Alabama. Plaintiff regularly worked more than 50 hours per week and did not receive overtime premium pay at any time during the class periods.

8. Defendant Flowers Foods Inc. ("Flowers Foods") is a Georgia company with its principal place of business at 1919 Flowers Circle, Thomasville, Georgia, 31757. Flowers Foods

hires individuals, whom it classifies as independent contractors, to distribute its products by delivering them to grocery stores and stocking the products on store shelves. Flowers Foods employs distributors in 31 states throughout the southern and eastern parts of the United States.

9. Defendant Flowers Baking Co. of Gadsden, LLC is an Alabama company with its principal place of business at 605 W Grand Ave, Gadsden, Alabama 35904. Flowers Baking Co. of Gadsden is a wholly owned subsidiary and/or merged company of Flowers Foods, Inc. Flowers hires individuals, whom it classifies as independent contractors, to deliver and stock bakery and snack food products from its Gadsden distribution center.

10. Defendant Flowers Baking Company of Birmingham, LLC is an Alabama company with its principal place of business located at 900 16th St N., Birmingham, Alabama 35203. Flowers Baking Company of Birmingham is a wholly owned subsidiary and/or merged company of Flowers Foods, Inc. Flowers hires individuals, whom it classifies as independent contractors, to deliver and stock bakery and snack food products from its Gadsden distribution center.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1331, federal question jurisdiction, and 28 U.S.C. § 1367, supplemental jurisdiction for Alabama Claims.

12. Upon information and belief, there are more than 100 members of the proposed Federal Collective Group and more than 30 members in the proposed Alabama Class, and the amount in controversy, in the aggregate, exceeds $5 million exclusive of interest and costs.

13. Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(2) and 1391(c) because a substantial part of the events giving rise to the claim occurred in this district.

14. Plaintiffs bring this action on behalf of themselves, a Federal Collective Group, and an Alabama Class.

## COLLECTIVE ACTION ALLEGATIONS

15. Plaintiffs bring Count I of this Complaint as a collective action, alleging violations of the FLSA on behalf of themselves individually and all similarly situated individuals. This "Federal Collective Group" is defined as:

> all individuals who, through a contract with Defendants or otherwise, performed or perform as Distributors for Defendants under an agreement with Flowers Baking Co. of Gadsden and/or other distributor locations in Alabama and who were classified by Defendants as "independent contractors" (collectively "Covered Positions") anywhere in the United States at any time from the date that is three years preceding the commencement of this action through the close of the Court-determined opt-in period and who file a consent to join this action pursuant to 29 U.S.C. § 216(b).

The "Federal Collective Group" also includes the named Plaintiffs in this action. Plaintiffs reserve the right to modify this definition prior to conditional certification of the collective group.

16. Plaintiffs, along with current and former employees of Defendants, in Covered Positions are similarly situated in that they have substantially similar job requirements, pay provisions, and are subject to Defendants' common practice, policy, or plan of controlling their daily job functions.

17. Defendants regularly permitted and required Plaintiffs and members of the Federal Collective Group to work more than 40 hours per week without overtime compensation.

18. Upon information and belief, Defendants knew that Plaintiffs and all similarly situated individuals performed work that required overtime pay.

19. Defendants have therefore operated under a scheme to deprive these employees of overtime compensation by failing to properly compensate them for all time worked.

20. Defendants' conduct, as set forth in this Complaint, was willful and has caused significant damages to Plaintiffs and all similarly situated individuals.

21. Count I of this Complaint for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) because the claims of the Plaintiffs are similar to the claims of current and former independent contractors who worked for Defendants.

22. Defendants are liable under the FLSA for failing to properly compensate Plaintiffs and all similarly situated individuals, and notice of this lawsuit should be sent to them. Those similarly situated employees are known to Defendants and are readily identifiable through Defendants' payroll records.

## **CLASS ACTION ALLEGATIONS**

23. Plaintiffs bring Count II of this Complaint as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of an "Alabama Class" defined as follows:

> All individuals who, through a contract or agreement with Defendant or otherwise, performed or perform in a Covered Position for Flowers Foods, Inc., and/or its Alabama distributors at any time from the date that is six years preceding the commencement of this action through the close of the court-determined opt-out period.

Plaintiffs reserve the right to redefine the Class prior to class certification.

24. Numerosity: Members of the Class are so numerous that their individual joinder is impracticable. The precise number of Class members is unknown to Plaintiffs. However, upon information and belief, it is in excess of 30 individuals. The true number of Class members is, however, likely to be known by Defendant, and thus, Class members may be notified of the pendency of this action by first class mail, electronic, and published notice.

25. Commonality: There are numerous questions of law and fact common to Plaintiffs and the Class; those questions predominate over any questions that may affect individual Class members, and include the following:

      a.      whether Plaintiffs and members of the Class have been misclassified as independent contractors and actually were or are employees of Defendants;

      b.      whether Defendants have violated the rights of Plaintiffs and members of the Class by failing to pay them overtime premium wages, making illegal deductions from their wages, depriving them of other benefits of being employees and requiring them to pay Defendants' expenses;

      c.      whether Plaintiffs and members of the Class are entitled to injunctive relief prohibiting Defendants from making illegal deductions from the wages of Plaintiffs and members of the Class;

      d.      whether Plaintiffs and members of the Class are entitled to declaratory relief declaring that they are employees of Defendants;

      e.      whether Plaintiffs and members of the Class are entitled to injunctive relief requiring Defendants to convey to Plaintiffs and the Class the rights, privileges and benefits of employees;

      f.      whether the Defendants have been unjustly enriched at the expense of Plaintiff and members of the Class; and

      g.      whether Plaintiffs and members of the Class are entitled to certain types of pension and other benefits because they are employees of Defendants.

26.    Typicality: Plaintiffs' claims are typical of the other members of the Class. Plaintiffs are informed and believe that, like other distributors, Plaintiffs were misclassified as "independent contractors" when they actually were statutory and common-law employees, and were therefore deprived the protections of employee status under the law. Plaintiffs have the same duties and

responsibilities as other Class members, and is subject to the same policies and practices, and the same or substantially similar conditions of employment.

27. Adequacy: The named Plaintiffs will adequately represent the interests of the Class. Plaintiffs have been treated in the same manner as other Class Members by Defendants and has been damaged by this treatment in the same manner as other class Members by their loss of overtime premium wages, their exclusion from employee compensation programs, plans and agreements, and his payment of Defendants' expenses. Plaintiffs are committed to vigorously prosecuting this action. Plaintiffs have retained attorneys who are well qualified to handle lawsuits of this type. Plaintiffs have no interests that are adverse to those of the Class.

28. Predominance: This case should be certified as a class action because the common questions of law and fact concerning Defendants' liability predominate over any individual questions, including the amount of damages incurred by each person.

29. Superiority: A class action is the only realistic method available for the fair and efficient adjudication of the claims of the Alabama Class. The expense and burden of individual litigation makes it impracticable for members of the Class to seek redress individually for the wrongful conduct alleged in this Complaint. Were each individual member required to bring a separate lawsuit, the resulting multiplicity of proceedings would cause undue hardship and expense for the litigants and the Court, and create the risk of inconsistent rulings, which would he contrary to the interest of justice and equity. Litigating these claims in a single action will streamline discovery and avoid needless repetition of evidence at trial.

## FACTUAL BASIS

30. Defendant Flowers is a corporation whose business consists of distributing bakery and snack food products to retail customers, using a centralized network of communication, distribution, and warehousing facilities integrating Class members into that existing network of

operations. One of Defendant Flowers Foods's bakeries and several of its warehouses are operated by Defendant Flowers Baking Co. of Gadsden and other warehouses in Alabama.

31. Defendant Flowers, by and through its subsidiaries such as Defendants Flowers Baking Co. of Gadsden and Flowers Baking Company of Birmingham, ships bakery and snack products to warehouses and Distributors, such as Plaintiffs and members of the proposed classes, arrive at a warehouse early in the morning and load their vehicles with Defendants' products.

32. The distributors then deliver the product to Defendants' retailer-customers at the time and place specified by Defendants.

33. The distribution agreement between Defendants and its distributors (including Plaintiffs) have no specific end date and can be terminated by either party at any time with limited notice.

34. Defendant Flowers markets its bakery and snack products to retailers such as Wal-Mart, Target, Dollar General, and other grocery stores and mass merchants. Defendant Flowers negotiates with the retailers to set virtually all terms of the relationship including:

    a. wholesale and retail prices for products;

    b. service and delivery agreements;

    c. shelf space to display products;

    d. product selection;

    e. promotional pricing for products;

    f. the right to display promotional materials;

    g. print advertisements in retailers' newspaper ads; and

    h. virtually every other term of the arrangement.

35. In some cases, Flowers negotiates and agrees with retailers and fast food restaurants to manufacture and distribute the retailer's store brand (or private label) bread products.

36. Defendant Flowers often negotiates the above terms for fresh-baked bread and snack products (which are distributed by Plaintiffs and members of the proposed classes) at the same time as it negotiates terms for its shelf-stable snack products (which are not distributed by Plaintiffs). The result is that Distributors' job duties and ability to earn income is tied directly to the sale and promotion of products outside of their control.[2]

37. The relationship between each member of the Class and Defendant is essentially the same in material respects.

38. Plaintiffs and members of the proposed classes must strictly follow Defendants instructions and adhere to the pricing, policies, and procedures negotiated between Defendants and their retailer-customers.

39. Distributors use Defendants' hand-held computer to log the delivery, and Defendant bills its customers using the data entered into the computer by the Distributor. The terms of the sale are negotiated between Defendants and its retailer-customer.

40. Distributors place Defendants' products on the retailer-customer's shelves, remove stale or rejected product, and organize the retailer-customer's display shelf. If Defendants are running a sale or promotion, the Distributor also constructs and stocks the promotional display. Defendants usually reimburse Distributors for stale or rejected product.

---

[2] For example, Flowers negotiated with a large retailer that it would manufacture the retailer's private label bread at a near zero profit margin in exchange for the retailer providing space for Flower's Foods' drop-shipped shelf-stable cake products. The result is that Flowers profits off the sale of its shelf-stable products while passing the cost. expense of distributing its loss-leading private label bread to Plaintiffs and members of the proposed classes, all of whom have no right to reject the arrangement without losing their jobs.

41.     Defendants represented to Plaintiffs and other Distributors that they would run their businesses independently, have the discretion to use their business judgment, and have the ability to manage their businesses to increase profitability.

42.     Contrary to its representations, Defendants denied Plaintiffs and other Distributors benefits of ownership and entrepreneurial skill by retaining and exercising the following rights:

a.     the right to negotiate the wholesale price for the purchase and sale of products;

b.     the right to negotiate shelf space in the stores in the Distributor's territory;

c.     the right to negotiate the retail sale price for products;

d.     the right to establish all sales and promotions and to require Distributors to follow them;

e.     the right to change orders placed by Distributors, to require them to pay for product they did not order, load it on their trucks, deliver it to stores, maintain the product in the store, remove the product from the store, and return it to the warehouse for credit; Distributors who did not attempt to distribute the extra product were billed for the full wholesale price of that product;

f.     the right to assign delivery stops to each Distributor in a particular order and require Distributors to get approval for following a different order;

g.     the right to discipline Distributors, up to and including termination, for reasons including hiring employees to run their routes, taking time off work, or refusing a specific order to deliver a product to a particular store at a particular time;

       h.       the right to handle customer complaints against the Distributor and to take disciplinary action;

       i.       the right to withhold pay for certain specified expenses;

       j.       the right to unilaterally terminate the employment relationship;

       k.       the right to unilaterally vary the standards, guidelines, and operating procedures; and

       l.       various other rights reserved by Defendants.

43. Plaintiffs and Class members were, or are, required to accept Defendants' conditions of employment or face termination.

44. Defendants not only retained the rights listed above, but it exercised the rights as well.

45. In another example, Defendants routinely modify a Distributor's product orders to increase the amount of the order. If a Distributor refuses the additional product, Defendants bill the Distributor for the product and deduct the cost from the Distributor's wages.

46. Defendants require the Distributors to process all transactions through a hand-held computer it provides to them. The hand held computer controls the product prices, maintains customer information, tracks mileage, and monitors business performance.

47. Defendants control the Plaintiffs and members of the Class' opportunities for profit or loss both by controlling wholesale pricing and negotiating retail pricing. Specifically, Defendants negotiate the sale of its products with major retailers. Plaintiffs and members of the Class then deliver the products to store locations per the agreement between Defendants and the retailer. Plaintiffs lack discretion as to what products to distribute to a particular store, whether to

run sales or promotions, how frequently to service stores, and similar discretion that would allow them to increase (or decrease) the profitability of their work.

48. Distributors' investment in equipment to operate their route is relatively low. Many distributors use their personal vehicles and a trailer to transport Flowers products to retailers. Apart from the purchase of a small trailer, there is no other investment necessary because Defendants provide computer equipment, administrative support, warehouse space, advertisements, promotional materials, bakery trays, market advice, strategic development, and virtually every other business necessity. Defendants even arrange for insurance and vehicle financing on behalf of Distributors; Distributors pay for the insurance through wage deductions.

49. The distribution job performed by Plaintiffs and members of the proposed classes does not require specialized skills.

50. Because they were misclassified as non-employees, Plaintiffs and members of the Class were denied the rights and benefits of employment, including, but not limited to overtime premium wages.

51. Plaintiffs and members of the Class have incurred expenses for equipment, insurance, product loss, product return, and other expenses that Defendant has required them to purchase or pay, or that are necessary for their work.

52. Distributors work, on average, a total of 50-55 hours during a seven-day workweek for which no Plaintiffs or, upon information and belief, member of the proposed class has received overtime premium wages.

53. During the relevant time period, Plaintiffs worked in excess of 40 hours every week of the year. Plaintiffs worked 50-55 hours per week on average. Plaintiffs never worked less than

45 hours per week and at times had to work up to 60 hours to service all their assigned stores. Plaintiffs are aware of other Distributors who worked 50 hours or more per week on average.

54.     Defendants' mischaracterization of the Distributors as independent contractors, the concealment or non-disclosure of the true nature of the relationship between Defendants and the distributors, and the attendant deprivation of substantial rights and benefits of employment are part of an on-going unlawful practice by Defendants which this Court should enjoin.

## COUNT I

### FAILURE TO PAY OVERTIME TO THE FEDERAL COLLECTIVE GROUP FLSA, 29 U.S.C. §§ 201, *et seq.*

**(On behalf of the named Plaintiffs and the Federal Collective Group)**

55.     Plaintiffs re-allege and incorporates by reference each and every allegation set forth in the preceding Paragraphs.

56.     Section 206(a)(1) of the FLSA provides in pertinent part:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any work week is engaged in commerce or in the production of goods for commerce, for a work week longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

57.     There are no exemptions applicable to Plaintiffs or to other members of the Federal Collective Group.

58.     For purposes of the FLSA, the employment practices of Defendants were and are uniform in all respects material to the claims asserted in this Complaint throughout the portions of United States in which Defendants conduct business.

59. Plaintiffs and the other members of the Federal Collective Group, either regularly or from time to time, worked more than 40 hours per week, but did not receive overtime pay.

60. At all relevant times, Defendants have had gross operating revenues in excess of $500,000.

61. In committing the wrongful acts alleged to be in violation of the FLSA, Defendants acted willfully in that they knowingly, deliberately, and intentionally failed to pay overtime premium wages to Plaintiffs and other members of the Federal Collective Group.

62. As a result of Defendants' failure to pay overtime premium wages, Plaintiffs and the other members of the Federal Collective Group were damaged in an amount to be proved at trial.

63. Therefore, Plaintiffs demand that they and the other members of the Federal Collective Group be paid overtime compensation as required by the FLSA for every hour of overtime worked in any work week for which they were not compensated, plus interest, damages, penalties, and attorneys' fees as provided by law.

## COUNT II

## VIOLATION OF ALABAMA LAW

**(Brought by Plaintiffs on behalf of themselves and the Alabama Class)**

64. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs, as if set forth fully herein.

65. By virtue of this count, the Plaintiffs, both individually and in their representative capacities, seek to recover "gap time" wages that are due and owing to them from the Defendants, which may not otherwise be recoverable pursuant to the FLSA.

66. "Gap time refers to time that is not covered by the [FLSA's] overtime provisions because it does not exceed the overtime limit, and to time that is not covered by the [FLSA's]

minimum wage provisions because, even though it is uncompensated, the employees are still being paid a minimum wage when their salaries are averaged across their actual time worked." See Jernigan v. 1st Stop Recovery, Inc., Docket No. 2:17-cv-265, 2017 WL 3682332, at *2 (M.D. Fla. August 25, 2017) (quoting Adair v. City of Kirkland, 185 F.3d 1055, 1062 n.6 (9th Cir. 1999)).

67. Even if (for the sake of argument) the Plaintiffs were paid a minimum wage when their salaries are averaged across their actual time worked, at the Defendants' request and insistence, the Plaintiffs and the members of the Alabama Class routinely provided many hours of labor and services to the Defendants on a completely uncompensated basis, thus creating circumstances whereby fairness requires that the Plaintiffs and the Alabama Class be compensated, so as to prevent the Defendants from being unjustly enriched at the expense of the Plaintiffs and members of the Alabama Class.

68. Indeed, as described in detail above, the Plaintiffs performed for the Defendants many hours of work and labor, on a completely uncompensated basis, and the Defendants failed to pay employee wages for those hours, and/or took improper and inequitable deductions from said wages, and/or improperly and inequitably structured the employment relationship.

69. This count seeks to recover for such "gap time" under the Alabama common law theories of "work and labor done," unjust enrichment, quasi-contract, implied contract, breach of contract, *quantum meruit*, and breach of the duty of good faith and fair dealing, and other applicable Alabama common law theories.

70. This count further asserts generally the Alabama common law theories of "work and labor done," unjust enrichment, quasi-contract, implied contract, breach of contract, *quantum meruit*, and breach of the duty of good faith and fair dealing, and other applicable Alabama common law theories, and seeks to recover to the fullest extent available.

71. Indeed, under Alabama common law, an employer may not among other things (1) require or permit an employee to work without paying compensation for *all* hours worked; or (2) make inequitable and improper deductions from employee wages.

72. The Defendants bear the burden of proving any exemptions applicable to the Plaintiffs or to other members of the Alabama Class, and cannot do so.

73. The Defendants, through their policies and practices described above, willfully violated Alabama law throughout the Class Period, and continuing through the present, as described in detail above and as follows:

    a. By failing to pay the Plaintiffs and other members of the Alabama Class for the aforesaid "gap time" hours, in violation of Alabama law;

    b. By making improper deductions from wages, leading to unpaid "gap time" hours and other inequities, in violation of Alabama law;

    c. By failing to make, keep, and preserve accurate time records with respect to the Plaintiffs and other members of the Alabama Class sufficient to determine their wages and hours, in violation of Alabama law;

    d. By failing to provide lawful notice to the Plaintiffs and other members of the Alabama Class of its policies and practices or any change in its policies and practices concerning compensation in violation of Alabama law; and

    e. By other practices in violation of Alabama law.

74. The Defendants owe the Plaintiffs and the members of the Alabama Class compensation, in the amount of their straight-time hourly rates, for gap-time losses.

75. The Defendants' action in denying all wages owed to the Plaintiffs and class members was intentional and constituted a willful acceptance of work and labor done by the Plaintiffs and other members of the Alabama Class without paying the appropriate compensation.

76. Indeed, the Defendants accepted the performance of, and retained the benefit of, the work performed by the Plaintiffs and class members without paying for that work; the Defendants have been unjustly enriched as a result of accepting the work of the Plaintiffs and the class without proper compensation; and it would be unjust to allow the Defendants to enjoy the fruits of the collective class's labor without proper compensation.

77. The Defendants owe the Plaintiffs and members of the Alabama Class for the aforesaid work and labor performed by them for a period of up to six (6) years preceding the date of the filing of the initial Complaint in this matter.

78. As set forth above, the Plaintiffs and other members of the Alabama Class have sustained losses, well in excess of the federal minimum wage of $7.25 per hour, in compensation as a proximate result of the Defendants' violations of Alabama law.

79. Accordingly, the Plaintiffs, on behalf of themselves and the Alabama Class members, seek damages in the amount of their unpaid earned compensation, plus liquidated damages, as provided by Alabama law.

80. The Plaintiffs, on behalf of each individually, and the Alabama Class members, seek recovery of their attorneys' fees and costs, as provided by Alabama law, and otherwise.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs request of this Court the following relief on behalf of themselves and all members of the Class and all other similarly situated individuals:

a. An Order certifying the Federal Collective Group and the Alabama Class, appointing Plaintiffs as Class Representative, and appointing the undersigned counsel of record as Class Counsel;

b. An Order for declaratory and injunctive relief designating the Plaintiffs and members of the Federal Collective Group and Alabama Class as employees and enjoining Defendants from pursuing the illegal policies, acts and practices described in this Complaint;

c. An Order declaring the Defendants' conduct as willful, not in good faith and not based on reasonable grounds;

d. An Order requiring Defendants to compensate Plaintiffs and the other members of the Class for the reasonable value of the benefits Plaintiffs provided to Defendants;

e. Reimbursement of unpaid wages at overtime rates for all overtime work as described in this Complaint;

f. Payment of any penalties or other amounts under any applicable laws, statutes or regulations, including but not limited to liquidated damages;

g. Judgment in favor of each Class member for damages suffered as a result of the conduct alleged herein, to include pre judgment interest;

h. Award Plaintiffs reasonable attorneys' fees and costs;

i. Award Plaintiffs and the other members of the Class punitive damages in an amount to be determined at trial; and

j. Grant such other and further legal and equitable relief as this Court deems just and necessary.

**LAW OFFICE OF REGINALD D. MCDANIEL**

**/s/Reginald D. McDaniel, Esquire**
(ASB-7676-L73M)

        3720 4th Avenue South
        Birmingham, AL 35222
        205.222.8656 Office
        888.357.8447 Fax
        Rmcdaniellaw@gmail.com

**SHERMAN SILVERSTEIN KOHL ROSE & PODOLSKY, P.A.**

**/s/ Alan C. Milstein, Esquire**
(*Pro Hac Vice*)
308 Harper Drive, Suite 308
Moorestown, NJ  08057
800.662.0700 Office
856.488.4744n Fax
amilstein@shermansilverstein.com

*Attorneys for Plaintiffs Gerald Hall, James D. House and John K. Rary*

**Respectfully submitted:**

**DATE:** <u>Friday, April 6, 2018</u>

### JURY DEMAND

Plaintiffs hereby demand trial by struck jury.

        <u>s/ Reginald D. McDaniel</u>
        Of Counsel